| | |
|---|---|
| 1 | C. D. Michel - S.B.N. 144258 |
|   | Glenn S. McRoberts - S.B.N. 144852 |
| 2 | Clinton B. Monfort - S.B.N. 255609 |
|   | MICHEL & ASSOCIATES, PC |
| 3 | 180 E. Ocean Boulevard, Suite 200 |
|   | Long Beach, CA 90802 |
| 4 | Telephone: 562-216-4444 |
|   | Facsimile: 562-216-4445 |
| 5 | Email: cmichel@michellawyers.com |
| 6 | Attorneys for Amicus Curiae Applicants National Rifle Association, Inc. |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | | |
|---|---|---|
| THERESE MARIE PIZZO, | ) | CASE NO. 09-CV-04493-CW |
| | ) | |
| Plaintiffs | ) | **NOTICE OF MOTION AND MOTION FOR** |
| | ) | **AMICUS CURIAE STATUS BY NATIONAL** |
| vs. | ) | **RIFLE ASSOCIATION, INC., AND** |
| | ) | **MEMORANDUM OF POINTS AND** |
| CITY AND COUNTY OF SAN FRANCISCO, MAYOR GAVIN NEWSOM, in both his individual and official capacities; FORMER SAN FRANCISCO POLICE DEPARTMENT CHIEF OF POLICE HEATHER FONG, in both her individual and official capacities; SAN FRANCISCO POLICE DEPARTMENT CHIEF OF POLICE GEORGE GASCÓN, in his official capacity, SAN FRANCISCO SHERIFF MICHAEL HENNESSEY, in both his individual and official capacities; CITY AND COUNTY OF SAN FRANCISCO; and STATE OF CALIFORNIA ATTORNEY GENERAL KAMALA HARRIS in her official capacity, | ) | **AUTHORITIES IN SUPPORT** |
| | ) | |
| | ) | Hearing Date: May 5, 2011 |
| | ) | Time:        2:00 p.m. |
| | ) | Place:        Courtroom 2, 4th Floor |
| | ) | |
| Defendants. | ) | |

Motion for Amicus Curiae Status by National Rifle Association, Inc.

# TABLE OF CONTENTS

PAGE(S)

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   PROCEDURAL POSTURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . 4

III. INTERESTS OF THE NATIONAL RIFLE ASSOCIATION . . . . . . . . . . . . . . . . . . 4

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   NRA and the Other *Jackson* Plaintiffs Have Important Interests
        at Stake in the *Pizzo* Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   NRA's Interests Are Not Being Adequately Protected in *Pizzo* . . . . . . . . . . . 6

    C.   NRA Will Assist in the Resolution of this Case and Will Not
        Unduly Burden the Court or the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D.   The Court Has Broad Discretionary Authority to Confer
        Amicus Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Motion for Amicus Curiae Status by National Rifle Association, Inc.

i

**TABLE OF AUTHORITIES**

**PAGE(S)**

**FEDERAL CASES**

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Funbus Sys., Inc. v. State of Cal. Pub. Utils. Comm'n*,
   801 F.2d 1120 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hoptowit v. Ray*,
   682 F.2d 1237, 1260 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jackson v. City and County of San Francisco*,
   No. 09-2143 (N.D. Cal. filed May 15, 2009) . . . . . . . . . . . . . . . . . . . . . . . . passim

*McDonald v. City of Chicago*,
   __ U.S. __, 130 S. Ct. 3020 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Mehl v. Blanas*,
   No. 03-2682 (E.D. Cal. Mar. 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Miller-Wohl Co. v. Comm'r of Labor & Indus.*,
   694 F.2d 203, 204 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*,
   293 F.3d 128, 132 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nordyke v. King*,
   No. 07-15763 (9th Cir. Sept. 24, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6

*Rothery v. Blanas*,
   No. 08-2064 (E.D. Cal. July 15, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Silveira v. Lockyer*,
   312 F.3d 1052 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Silver v. Babbitt*,
   166 F.R.D. 418, 435 (D. Ariz. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES & RULES**

18 U.S.C. §§ 926B, 926C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

San Francisco Police Code section 613.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

San Francisco Police Code section 1290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

San Francisco Police Code section 4512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

California Penal Code section 12031 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Penal Code section 12050 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

National Rifle Association, Inc. (NRA), hereby moves the Court to grant NRA amicus curiae status in order to participate in this action as such.

The hearing on the motion will take place at 2:00 p.m. on May 5, 2011, or as soon thereafter as may be heard, before the Honorable Claudia Wilken in Courtroom 2, Fourth Floor of the United States District Court, Oakland Division, 1301 Clay Street, Oakland, California 94612. The motion shall be based on this notice of motion and motion, the supporting memorandum of points and authorities, declaration and evidence in support, any arguments of counsel at the hearing, and any such further matters as the Court deems appropriate.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PROCEDURAL POSTURE

On May 15, 2009, the NRA and several individual and associational plaintiffs filed a Complaint in *Jackson v. City and County of San Francisco*, Case No. 09-2143. The *Jackson* plaintiffs sought declaratory and injunctive relief against the City and County of San Francisco, Mayor Gavin Newsom, and Chief of Police Heather Fong (collectively "the City" or "the *Jackson* defendants"). The *Jackson* case challenges the validity of three firearms-related ordinances enacted and enforced by the City: (1) San Francisco Police Code ("SFPC") section 4512, requiring handguns kept within the home be stored in a locked container or disabled with a trigger lock; (2) SFPC section 1290, prohibiting the discharge of any firearm within the limits of the City and County of San Francisco; and (3) SFPC section 613.10(g), prohibiting the sale of ammunition which "serves no sporting purpose." (Decl. of C.D. Michel Supp. Mot. for Amicus Curiae Status ["CDM Decl."] ¶ 1; Ex. A.)

On July 9, 2009, the *Jackson* defendants filed a Motion to Dismiss for lack of Subject Matter Jurisdiction. The *Jackson* plaintiffs then amended their Complaint, addressing the jurisdictional concerns and obviating the need for a hearing on the City's motion. (CDM Decl. ¶ 4; *see also* Ex. A.)

On August 27, 2009, litigation of *Jackson* was stayed pending a decision in *Nordyke v. King*, Case No. 07-15763, a Ninth Circuit case then expected to resolve the pertinent issue of

Second Amendment incorporation through the Fourteenth Amendment. (CDM Decl. ¶ 5; Ex. B.).

Thereafter, *Nordyke* was itself stayed pending the U.S. Supreme Court ruling in *McDonald v. City of Chicago*, __ U.S. __, 130 S. Ct. 3020 (2010), on the incorporation issue. Order, *Nordyke v. King*, No. 07-15763 (9th Cir. Sept. 24, 2009).

On September 23, 2009, some four months after *Jackson* was filed, *Pizzo v. Newsom* was filed. Plaintiff Pizzo sued Mayor Gavin Newsom, former Chief of Police Heather Fong, and Chief of Police George Gascón, in both their individual and official capacities, Sheriff Mike Hennessey and California Attorney General Edmund G. Brown, in their official capacities only, and the City and County of San Francisco. (Compl. at 6-7, ¶¶ 45, 49, 53, 56-59, 62.).

Like *Jackson*, the *Pizzo* case challenges the constitutionality of SFPC sections 4512, 1290, and 613.10(g). But *Pizzo* also challenges California Penal Code section 12050 et seq. (concerning the discretionary issuance of carry concealed weapons (CCW) licenses by local law enforcement), California Penal Code section 12031(b) (prohibiting the carrying of a loaded firearm in a public place or on a public street in one's vehicle, except as to current and retired police officers), and the federal Law Enforcement Officers Safety Act (LEOSA), codified at 18 U.S.C. §§ 926B, 926C. (Compl. at 7, ¶¶ 64-66.)

On December 10, 2009, *Pizzo* was stayed pending a decision in *Nordyke*. (Order Granting Stay of Proceedings as Modified, Dec. 10, 2010.)

On June 28, 2010, the U.S. Supreme Court issued its decision in *McDonald v. City of Chicago*, holding that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right [to possess a handgun in the home for the purpose of self-defense] recognized in *Heller*" to apply to the states. 130 S. Ct. at 3050.

With the Second Amendment incorporation issue resolved, the *Jackson* plaintiffs filed a Motion for Relief from Stay, which the court granted on September 13, 2010, over defendants' opposition. (CDM Decl. ¶ 7; Ex. C.) At that time, *Pizzo* remained stayed.

On September 22, 2010, the *Jackson* defendants filed a motion seeking an extension of time to file an answer to plaintiffs' Complaint. The *Jackson* plaintiffs did not oppose it out of professional courtesy. (CDM Decl. ¶ 8, Ex. D.)

Even though the *Jackson* court had already determined that *Pizzo* and *Jackson* were not similar enough to be "related," the *Jackson* defendants filed a Motion to Consolidate the two cases. (CDM Decl. ¶ 9; Ex. E at 1:26-27.) For various reasons, the *Jackson* plaintiffs opposed consolidation, including the facts that plaintiffs in each case are pursuing drastically different litigation strategies and that *Pizzo* was still stayed, while *Jackson* was moving forward. (CDM Decl. ¶ 10.)

On December 16, 2010, the *Jackson* court denied defendants' consolidation request. (CDM Decl. ¶ 11; Ex. E.)

In January 2011, the *Jackson* defendants requested that plaintiffs stipulate to yet another extension of time to file their responsive pleading. Plaintiffs agreed, on the condition that any motion to dismiss would be filed and noticed so as to give plaintiffs at least one month to prepare their opposition. The *Jackson* court accepted the parties' stipulation on January 28, 2011. (CDM Decl. ¶ 12, Ex. F.)

On January 4, 2011, a Case Management Conference was held in the *Pizzo* case. At that case management conference, the stay in *Pizzo* was lifted. Deadlines were set for briefing and hearing any motion to dismiss, and for case management up to and including trial. (Min. Order & Case Mgmt. Order, Jan. 4, 2011).

On February 10, 2011, the *Jackson* defendants filed a Motion to Dismiss for Lack of Jurisdiction on standing and ripeness grounds, and plaintiffs filed their opposition on March 23, 2011. The *Jackson* defendants' Reply is due March 31, 2011. A hearing is set to be held before Judge Richard Seeborg at 1:30 p.m. on April 14, 2011. (CDM Decl. ¶ 13; *see also* Ex. A.)

Meanwhile, on March 3, 2011, instead of filing a motion to dismiss *Pizzo's* challenges to SFPC 4512, 1290, and 613.10(g) on standing and ripeness grounds (as it did to *Jackson's* identical claims), the *Pizzo* City and County defendants filed an Answer. (Answer to Compl. by City & County of San Francisco, Heather Fong, George Gascón, Michael Hennessy, Gavin Newsom.) So *Pizzo* is moving forward, unencumbered by the many preliminary motions raised by the defendants' in *Jackson*.

Counsel for NRA has informed all *Pizzo* parties of its intention to file a motion seeking

amicus curiae status. (CDM Decl. ¶ 14-15; Ex. G.) Both plaintiff Pizzo and the City and County defendants have indicated they would oppose NRA's request. (CDM Decl. ¶¶ 14, 16-17.) As of the time of this filing, defendant State of California Attorney General Kamala Harris has yet to respond. (CDM Decl. ¶ 18.)

## II.   INTRODUCTION AND SUMMARY OF ARGUMENT

Several claims in *Pizzo* were literally copied from the *Jackson* Complaint and pasted nearly word for word into the *Pizzo* Complaint (which also contains other claims not made in the *Jackson* case). *See, e.g.,* Complaint at ¶¶ 74-76, 100-102, 104-105, *Pizzo v. Newsom*, No.09-4493, (N.D. Cal. filed Sept. 23, 2009); Complaint at ¶¶ 26-29, 52-54, 58-60, *Jackson v. City and County of San Francisco*, No. 09-2143 (N.D. Cal. filed May 15, 2009).

NRA thus seeks to participate in *Pizzo* as an amicus primarily to address the challenges to SFPC sections 4512, 1290, and 613.210(g), but would also like to be able to comment on other challenges raised in *Pizzo* to the extent its members' interests might be impacted.

Of particular concern to NRA is the great possibility that defendants will litigate a dispositive motion or otherwise reach the merits of the claims in *Pizzo*, while *Jackson* remains stalled by what appears to be strategic gamesmanship and procedural maneuvering by the City. While the City has the technical procedural ability to try to select the case it prefers to litigate first, any outcome in the *Pizzo* case will have a bearing on NRA's claims in *Jackson*. And, because NRA's members' interests cannot be sufficiently represented in *Pizzo*, it seeks amicus status to ensure its members interests will be properly heard and protected.

Aside from the benefit to NRA and its members, the Court will benefit from NRA's unique expertise in Second Amendment litigation and its wealth of knowledge and resources regarding the use of firearms and ammunition for effective self-defense. Further, as discussed below, NRA intends to and believes it can serve as amicus with no undue burden on the *Pizzo* Court or parties.

## III.   INTERESTS OF THE NATIONAL RIFLE ASSOCIATION

NRA is a non-profit membership organization founded in 1871 and incorporated under the laws of New York, with headquarters in Fairfax, Virginia, and an office in Sacramento,

California. NRA represents hundreds of thousands individual members and approximately 850 affiliated clubs and associations in California. Among its other activities, NRA works to preserve and protect the constitutional and statutory rights of gun ownership, including the right to self-defense and the Second Amendment right to keep and bear arms.

As an amicus, NRA intends to represent the interests of its members, including those who reside in the City and County of San Francisco, and to promote their rights to keep their firearms operable in their homes for effective use during self-defense emergencies, and to use those firearms, along with appropriate ammunition, for self-defense.

IV.   ARGUMENT

    A.   **NRA and the Other *Jackson* Plaintiffs Have Important Interests at Stake in the *Pizzo* Case**

In addition to the general interests in the subject matter of this litigation, NRA and the other *Jackson* plaintiffs have concrete interests at risk in this lawsuit that are more than sufficient to support amicus status. An amicus need not necessarily have an interest at stake in order to assist the Court in resolving a dispute, but NRA's interests in this case help demonstrate not only that it will participate in a helpful way, but also that it *should* have its voice heard in the *Pizzo* case.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that D.C.'s "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home *operable for the purpose of immediate self-defense*." 554 U.S. at 635 (emphasis added). NRA's members in California, specifically those residing in the City and County of San Francisco, brought their own challenge to SFPC sections 4512, 1290, and 613.10(g), seeking to vindicate their Second Amendment rights to render their handguns operable for the purpose of employing effective, immediate self-defense, to access ammunition most appropriate for that purpose (regardless of whether it also serves some "sporting purpose"), and to discharge their firearms, as necessary, in defense of themselves, their families, and their homes.

Those same interests are at stake in *Pizzo* – because the Pizzo plaintiffs literally copied *them from the Jackson Complaint*. And because of the possibility, and perhaps likelihood, that

*Pizzo* will be litigated on its substantive merits before *Jackson* has moved much beyond preliminary motions, any result in *Pizzo* will directly impact NRA's claims in *Jackson*. As such, NRA's members have a strong interest in the outcome of *Pizzo*, and they deserve the opportunity to be heard before the *Pizzo* court.

### B. NRA's Interests Are Not Being Adequately Protected in *Pizzo*

Throughout the course of litigating the *Jackson* case, defendants appear to have tried to stall the progress of that case. They no doubt deny this. But their actions suggest otherwise. Those actions have taken the form of opposing the motion to lift the stay imposed pending the outcome of *McDonald* and/or *Nordyke*, repeated requests for extended time to file a responsive pleading, and the filing of several preliminary motions including a motion to consolidate *Jackson* and *Pizzo,* and a motion to dismiss on standing and ripeness grounds. (CDM Decl. ¶¶ 7-9, 12-13.)

In *Pizzo,* on the other hand, those same defendants passed on the opportunity to dispose of identical challenges to SFPC sections 4512, 1290, and 613.10(g) by way of a motion to dismiss on standing and ripeness grounds, filing their Answer immediately after the stay in *Pizzo* was lifted.

While it is the strategic prerogative of defendants to try to choose which case (and which lawyers) it would prefer to deal with first,[1] NRA need not stand idly by and watch it happen. NRA reasonably fears that *Pizzo* will proceed to resolution on the merits, possibly negatively impacting the interests of NRA's members, before the NRA and the other *Jackson* plaintiffs have the opportunity to be heard.

Further, NRA's interests are not being and cannot be sufficiently represented in the *Pizzo* case. *Pizzo* raises eleven claims, challenging local, state, and federal law, under a number of theories, against multiple local and state officials. Such a "kitchen sink" approach itself indicates a strategic choice that runs counter to the *Jackson* plaintiffs' careful selection of their claims, and it suggests that sufficient energy and resources will not be devoted to or expended on the

---

[1] While NRA does not presume to *know* that this is the strategy being employed by the *Jackson* defendants, it highly suspects this to be the case in light of the many procedural hurdles the City has placed in the way of the *Jackson* plaintiffs' ability to move forward with their claims–and the absence of those same tactics in *Pizzo*. In fact, defendants' counsel previously insinuated that she might choose to move *Pizzo* more quickly than *Jackson*, a threat she appears to be carrying through. (CDM Decl. ¶ 6.)

constitutional challenges to sections 4215, 1290, and 613.10(g).

While NRA has an interest in the state of the law regarding the issuance of CCW permits in California and the right to carry firearms for self-defense and other lawful purposes, NRA would have (and has) chosen to raise such claims wholly apart from their challenge to San Francisco's local ordinances, which have little or nothing to do with the legal issues surrounding the carrying of a firearm *outside* of one's home. Ultimately, NRA opposed consolidation of *Jackson* and *Pizzo* to avoid being bogged down by the state and federal claims brought in *Pizzo* and the vast differences among the issues presented by those challenges. (CDM Decl. ¶ 10.)[2]

What's more, plaintiff Pizzo's counsel of record has an unfortunate history of missing deadlines and pursuing ill-advised litigation strategies. For instance, in a previous Second Amendment case of great public importance, *Silveira v. Lockyer*, 312 F.3d 1052 (2002), plaintiff's counsel did not file a reply brief at the appellate level, passing on the opportunity to provide valuable briefing to the Ninth Circuit on important Second Amendment constitutional issues and allowing the opposing party's arguments to go unanswered. (*See* Ex. H (General Docket, *Silveira v. Lockyer*, 312 F.3d 1052 (2002) (No. 01-15098).)

More recently, a judge in the United States District Court for the Eastern District of California lambasted counsel's work on the record, suggesting that his lengthy complaint was "Exhibit A of what you should *not* do in terms of pleading a complaint in federal court," that he had "a fundamental lack of understanding of the Federal Rules of Civil Procedure," and that his lawsuit was "almost frivolous, if not frivolous" in light of *Mehl v. Blanas*, a nearly identical challenge brought unsuccessfully by plaintiff's counsel in 2003. (Ex. K (Reporter's Transcript, Court's Rulings on Motions to Dismiss at 1:17-22, 17:22-18:8, 19:13-18, *Rothery v. Blanas*, No. 08-2064 (E.D. Cal. July 15, 2009).)[3]

---

[2] NRA also opposed consolidation with the *Pizzo* case because it remained stayed long after the stay in *Jackson* was lifted. (CDM Decl. ¶ 10.) Pizzo's choice not to move to lift the stay after the ruling in *McDonald* was issued, while the *Jackson* plaintiffs moved *immediately* to protect their fundamental rights, is yet another example of the wildly different litigation strategies being pursued by the plaintiffs in each case.

[3] Further, in *Mehl v. Blanas*, Case No. 03-02682, plaintiff's counsel failed to timely object to the prevailing parties' Bill of Costs, causing his late objections to be stricken. The court thus

Motion for Amicus Curiae Status by National Rifle Association, Inc.

These instances further underscore NRA's fear that its members' interests will be insufficiently represented in the *Pizzo* case. Taken together with the fact that the *Jackson* and *Pizzo* plaintiffs have taken vastly different strategic approaches to litigating their challenges to SFPC sections 4512, 1290, and 613.10(g), it is apparent that, absent participation as amicus curiae, NRA's interests will not be adequately represented in *Pizzo*.

### C. NRA Will Assist in the Resolution of this Case and Will Not Unduly Burden the Court or the Parties

NRA can offer the Court valuable input on the legal and factual issues related to the Second Amendment implications of this case, as it has had extensive involvement in these and similar issues in other contexts. As amicus, NRA will strive to avoid duplicative and excessive briefing by working, to the extent possible, to coordinate with the other parties.[4] And NRA will comply with any restrictions the Court deems necessary and appropriate. In short, by participating as amicus, NRA will add a meaningful voice to this case of high public importance, but will direct its efforts so as to refrain from placing undue burden on the Court and the other parties. *See Silver v. Babbitt*, 166 F.R.D. 418, 435 (D. Ariz. 1994).

NRA has extensive knowledge of the issues involved in the *Pizzo* case, having participated in numerous cases and proceedings regarding the constitutional and statutory rights of gun owners. For instance, NRA has participated as plaintiff, intervenor, or amicus in countless challenges to local, state, and federal regulations involving conduct protected by the Second Amendment, including the use of in-home self-defense, firearm purchase, ownership, and possession, and ammunition transfers. More specifically, NRA's participation as a plaintiff in *Jackson*, which includes identical challenges to SFPC sections 4512, 1290, and 613.10(g), makes it particularly and uniquely well-versed in the issues of this case.

As amicus, NRA intends to submit briefing to assist the Court in resolving this matter, and

---

ordered his clients pay defendants' costs in the amount of $5,873.22. (Ex. J (Order, *Mehl v. Blanas*, No. 03-2682 (E.D. Cal. Mar. 9, 2011).)

[4] For example, NRA would be willing to file its brief(s) a short time after plaintiff Pizzo submits hers, in order to limit or avoid duplication of arguments made by other parties.

further intends to supplement and compliment plaintiff Pizzo's presentation of this case, rather than duplicate her efforts. NRA expects that its memoranda will specifically address those claims that directly impact its interests in *Jackson*–namely, the challenges to SFPC sections 4512, 1290, and 613.10(g)–and the fundamental right of law-abiding residents of the City and County of San Francisco to defend themselves, their families, and their homes. In the case that other Second Amendment issues require the unique perspective of NRA, its memoranda may also address those issues. NRA can offer its unique experience, knowledge, and perspective to aid the Court in the proper resolution of this case. And it has at its service preeminent Second Amendment scholars, firearms, ammunition, and self-defense experts, and lawyers with decades of experience in firearms litigation. To the extent these challenges hinge on factual contentions regarding effective self-defense (and the rights appurtenant thereto), NRA is in a unique position to offer guidance to the Court.

Further, NRA can participate in this capacity without inviting undue prejudice on any party to this action. So as to minimize the burden on the Court and each party, NRA will abide by any restrictions on its participation the Court deems necessary. Further, NRA will respect the briefing schedule set in this case and will attempt, to the extent it is able, to work with plaintiff's counsel to avoid duplication and excessive briefing of the issues. And, if the Court so desires, NRA would be willing to file its brief(s) after plaintiff's filing(s) so as to avoid unnecessary repetition of argument. Such an approach would be consistent with Federal Rule of Appellate Procedure 29, which governs amicus participation in appellate proceedings. *See* Notes on Fed. R. App. P. 29(e) ("The 7-day stagger was adopted because it is long enough to permit an amicus to review the completed brief of the party being supported and avoid repetitious argument. A 7-day period is also short enough that no adjustment need be made in the opposing party's briefing schedule. The opposing party will have sufficient time to review arguments made by the amicus and address them in the party's responsive pleading.").

That said, it is apparent NRA will serve a significant benefit upon the Court in the role of amicus, while inviting no undue prejudice upon the parties of this action. As such, the Court should exercise its broad discretion to allow NRA to participate in this capacity.

### D. The Court Has Broad Discretionary Authority to Confer Amicus Status

Although no Federal Rule of Civil Procedure specifically governs participation by amicus curiae in the district courts, the Court has inherent discretionary authority to grant amicus status. *See Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982) (upholding district court's decision to appoint amicus status sua sponte). There are no strict or formal requirements for granting amicus status. Instead, courts often welcome the participation of an amicus who will offer information that is both timely and useful, including information that will aid the court's understanding of the case and the potential ramifications of the resolution of the case. An amicus can also help the court by "assisting in a case of general public interest, supplementing the efforts of counsel and drawing the court's attention to law that might otherwise escape consideration." *Funbus Sys., Inc. v. State of Cal. Pub. Utils. Comm'n*, 801 F.2d 1120 (9th Cir. 1986) (citing *Miller-Wohl Co. v. Comm'r of Labor & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982)). An amicus need not be impartial to the outcome of the case, *Hoptowit*, 682 F.2d at 1260; in fact, some interest in the outcome of the case is to be expected.

A case from the Third Circuit, penned by then-Judge, now-Justice Samuel Alito, extensively analyzed the amicus issue. *See Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 132 (3d Cir. 2002). The court outlined some of the benefits an amicus party can provide, including presenting background or factual information, offering special expertise, briefing points not emphasized by existing parties, and explaining the potential impact of a decision on a group. *Id.* at 132. Justice Alito adopted a "broad" approach to amicus participation, following what he considered to be the "predominant practice in the courts of appeal" and rejecting the "small body of judicial opinions that look with disfavor on motions for leave to file amicus briefs." *Id.* at 133. Finally, Justice Alito discussed safeguards the Court can employ to ensure that an amicus curiae will not unduly burden the court and other parties. He explained that the court should generally grant amicus status and, if the amicus brief is ultimately unhelpful or duplicative, the court may simply disregard the amicus' input. *Id*.

Consistent with Ninth Circuit precedent and Justice Alito's reasoning, the Court should exercise its broad discretion to allow NRA to participate as amicus, especially as it meets any

informal amicus criteria discussed above.

## V. CONCLUSION

NRA seeks primarily to present to the Court with its expertise and perspective on plaintiff's challenges to SFPC sections 4512, 1290, and 613.10(g). And it has demonstrated both that it has sufficient interest in this case to qualify for amicus status and that it will work with all parties to avoid unnecessary duplication of efforts. On behalf of its members in California, NRA respectfully requests the Court grant its Motion for Amicus Curiae status.

RESPECTFULLY SUBMITTED.

Date:                              **MICHEL & ASSOCIATES, PC**

                                                        /S/
                                                       C. D. Michel
                                                       Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THERESE MARIE PIZZO,<br><br>  Plaintiffs<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, MAYOR GAVIN NEWSOM, in both his individual and official capacities; FORMER SAN FRANCISCO POLICE DEPARTMENT CHIEF OF POLICE HEATHER FONG, in both her individual and official capacities; SAN FRANCISCO POLICE DEPARTMENT CHIEF OF POLICE GEORGE GASCÓN, in his official capacity, SAN FRANCISCO SHERIFF MICHAEL HENNESSEY, in both his individual and official capacities; CITY AND COUNTY OF SAN FRANCISCO; and STATE OF CALIFORNIA ATTORNEY GENERAL KAMALA HARRIS in her official capacity,<br><br>  Defendants. | CASE NO.: CV-09-2143-RS<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

I am not a party to the above-entitled action. I have caused service of:

**NOTICE OF MOTION AND MOTION FOR AMICUS CURIAE STATUS BY NATIONAL RIFLE ASSOCIATION, INC., AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**"SEE ATTACHED SERVICE LIST"**

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 31, 2011.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　/S/
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　C. D. Michel
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Attorney for Amicus

**"SERVICE LIST"**

Gary William Gorski
Law Offices of Gary W. Gorski
8549 Nephi Way
Fair Oaks, CA 95628
(916)965-6800
(916)065-6801 (fax)
usrugby@gmail.com


Geoffrey Lloyd Graybill
California Attorney General's Office
1300 I Street
P.O. Box 944255
Sacramento, CA 94244-2550
(916) 324-5465
(916) 324-8835 (fax)
geoffrey.graybill@doj.ca.gov


Sherri Sokeland Kaiser
Office of the City Attorney
City & County of San Francisco
#1 Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, CA 94102-4682
(415) 554-4691
(415) 554-4747 (fax)
sherri.sokeland.kaiser@sfgov.org


Daniel Michael Karalash
Law Ofc Daniel M Karalash
1207 Front St Ste 15
Sacramento, CA 95814
916-787-1234
916-787-0267 (fax)
dankaralash@gmail.com


Craig Cox Weaver
CC WEAVER & ASSOCIATES
P.O. Box 2275
Folsom, CA 95763
916-941-5184
916-404-4867 (fax)
craigcweaver@ccweaver.com

Motion for Amicus Curiae Status by National Rifle Association, Inc.
13