DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
SHERRI KAISER, State Bar #197986
Deputy City Attorneys
1 Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, California 94102-4682
Telephone:     (415) 554-4691
Facsimile:     (415) 554-4747
E-Mail:        sherri.kaiser@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
GAVIN NEWSOM, HEATHER FONG,
GEORGE GASCON, and MICHAEL HENNESSEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESE MARIE PIZZO,<br><br>             Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO MAYOR GAVIN NEWSOM, in both his individual and official capacities; FORMER SAN FRANCISCO POLICE DEPARTMENT CHIEF OF POLICE HEATHER FONG, in both her individual and official capacities; SAN FRANCISCO POLICE DEPARTMENT CHIEF OF POLICE GEORGE GASCON, in his official capacity; SAN FRANCISCO SHERIFF MICHAEL HENNESSEY, in both his individual and official capacities; CITY AND COUNTY OF SAN FRANCISCO; and STATE OF CALIFORNIA ATTORNEY GENERAL EDMUND G. BROWN, in his official capacity,<br><br>             Defendants. | Case No. C09-4493 CW<br><br>**SAN FRANCISCO DEFENDANTS' OPPOSITION TO MOTION FOR AMICUS CURIAE STATUS BY NATIONAL RIFLE ASSOCIATION**<br><br>Hearing Date:    May 5, 2011<br>Time:            2:00 p.m.<br>Place:           Courtroom 2, 4th Floor |

# INTRODUCTION

Defendant City and County of San Francisco ("City" or "CCSF") opposes the motion of the National Rifle Association ("NRA") to appear in this case as amicus curiae out of concern for efficiency and fairness, the two values it has consistently championed in its attempts to deal with two sets of identical Second Amendment claims pressed against it simultaneously by separate plaintiffs in separate courtrooms in the Northern District. The NRA opposed and defeated the City's motion to consolidate the two cases, arguing that its case would reach judgment more quickly if it proceeded separately. But now that the cases are proceeding separately, they are also proceeding differently, and the NRA is suddenly less certain that it will win the race to judgment. Accordingly, it wants to hedge its bets by participating in an ongoing fashion as amicus curiae in the case at bar, the very case in which it was once invited to participate, but which it instead chose to leave behind.

The Court should deny the request. First and foremost, the NRA itself insisted that the City be made to defend against the same claims in two forums, and it cannot now be heard in both. This would unfairly burden the City with the need to defend itself not just twice, which is bad enough, but at least three times and against three sets of briefs in regard to the same exact claims. And regardless of burden, it is simply unfair to give the NRA two bites at the apple and a second chance to convince a judge of this court to rule in its favor.

The Court should also reject the NRA's uninvited bid to participate as shadow counsel for the plaintiff to ensure that plaintiff's counsel, whom the NRA believes to be ill-equipped to litigate in its sole province, does not impair the rights of gun enthusiasts everywhere. The distasteful insult to Mr. Gorski aside, plaintiff has a right to the counsel and litigation strategy of her choice, without second-guessing from or usurpation by a political interest group.

Rather than seek to aid the Court or even to assist a party, the NRA seeks only to help itself. The NRA's voice and views on the City's ordinances will get a full airing before Judge Seeborg, who is free to come to his own conclusions regardless of the proceedings and judgment in this case. This Court does not need to duplicate those efforts here and should deny the NRA the unfair advantage of making its case twice before two judges of the same court. After securing its own independent forum, the NRA no longer has any legitimate role to play in this case.

## ADDITIONAL FACTUAL AND PROCEDURAL BACKGROUND

The NRA filed the *Jackson* case in May 2009. *Jackson v. CCSF*, N.D. Cal. Case No. 09-2143 RS, Docket Entry No. 1. In late August, it asked to stay its case pending expected guidance from the Ninth Circuit (Docket Entry Nos. 19 & 22). Plaintiff *Pizzo* filed her complaint in the instant case in late September. *Pizzo v. Newsom*, N.D. Cal. Case No. 09-4493 CW, Docket Entry No. 1. Taking note in the *Pizzo* complaint of an identical set of Second Amendment claims against three San Francisco ordinances borrowed almost verbatim from its own *Jackson* complaint, the NRA filed a notice of related case in which it took the position that:

> Conducting these cases before different Judges would create an unduly burdensome duplication of labor and expense and a risk of conflicting results. These cases should be deemed related, and possibly consolidated. *Pizzo* should be stayed. (*Jackson* Document No. 24, at 3.)

The City likewise asked the court to relate the cases, but Judge Hamilton, who was then presiding over *Jackson*, declined to do so. *Jackson* Document Nos. 25 & 26. Shortly thereafter, the *Pizzo* parties stipulated to staying this case pending Ninth Circuit guidance as well. *Pizzo* Docket Entry No. 9.

On September 13, 2010, at the request of the NRA, the court lifted the stay in *Jackson*. *Jackson* Docket Entry No. 37. In the preceding months, as the NRA began to talk of reactivating its case, the City inquired whether it was still interested in consolidating *Pizzo* with *Jackson* so that the identical claims in the two actions could proceed and be decided together. Declaration of Sherri Kaiser in Opposition to Motion for Amicus Curiae Status ("Kaiser Dec.") Ex. A. Counsel for the NRA had a "[b]etter idea." *Id*. He wanted the City to stipulate to lift the stay in *Jackson* while purposefully leaving the stay in *Pizzo* in place. *Id*. When the City expressed concern that treating the cases separately would double the City's workload and pointed out that the NRA could only be certain of *Jackson's* timing relative to *Pizzo* if the two cases were consolidated, the NRA replied that it would not object to such a motion, "just as we didn't before." *Id*.[1]

---

[1] Counsel kept his word—sort of. In the reply brief in support of the NRA's motion to lift the stay, counsel clearly telegraphed his growing distaste for consolidation and preference to be the first to judgment: "The parties to this case have previously jointly requested that this case be consolidated with another case that raised similar, but not identical issues. Although Plaintiffs had no objection if the court wants to consolidate those cases, the court declined to relate or consolidate the cases when we previously asked. There is certainly no reason to lift the stay [in *Pizzo*] solely for the purpose of considering that motion again." *Jackson* Document No. 33, at 5.

But on the same day that the order lifting the stay issued, the NRA suddenly and completely changed its mind.[2]  Kaiser Dec., Ex. B.  Accordingly, the City sought consolidation of *Jackson* and *Pizzo* by motion; the *Jackson* plaintiffs were the only parties in either case to oppose it.  *Jackson* Docket Entry Nos. 43 & 48.   Similarly to the instant motion, in its opposition to the City's motion to consolidate, the NRA complained bitterly that the City's procedural concern was nothing but a cynical attempt to slow down its case and deny the plaintiffs their constitutional rights for as long as possible.  *Jackson* Document No. 48, at 9-10.  They struck a similar theme on the merits, arguing that consolidation with *Pizzo* and its additional, non-identical claims would subject them to unbearable delay now that they were poised to seek a speedy judgment.  *Id*.  The *Jackson* court agreed and denied consolidation:

> [Plaintiffs] argue that this relatively streamlined case . . . should not be tethered to the more complex *Pizzo* action [. . .]  Without anticipating any specific constraints on the shape this litigation may eventually take, it likely will be significantly narrower than *Pizo* [*sic*].  It would therefore be unfair to plaintiffs in this action to force them to be involved in an action of much broader scope than the one they chose to initiate.  (12/16/10 Order Denying Motion to Consolidate, *Jackson* Document No. 55, at 1-2.)

In the wake of this order, the City set aside its focus on the similarities between the two cases and set about scheduling and defending them separately, as required.  In *Jackson*, it has filed a motion to dismiss for lack of jurisdiction on the ground that plaintiffs, who have never been prosecuted or threatened with prosecution under any of the challenged ordinances, cannot satisfy the "actual or imminent injury" component of standing.  Accordingly, they stand in the same undifferentiated shoes

---

[2] Shortly after the *Jackson* court announced its order, the City emailed the order to all counsel in both cases with this question:

> Footnote one invites any party to pursue consolidation of the Jackson and Pizzo cases by noticed motion or by stipulation.  As you all know, the City would like to consolidate the cases for assorted practical reasons.  Last I heard, the plaintiffs in Jackson either sought consolidation or did not object to it (this has fluctuated), the plaintiff in Pizzo agreed to consolidation, and the State defendants took no position.
>
> In light of this spectrum of opinion that indicates at least a general lack of opposition, would you all be willing to stipulate to consolidation?  Please advise.

Counsel for the NRA responded the same day, without further elaboration, "We would oppose consolidation at this stage."  Kaiser Dec., Ex. B.

as any other member of the general public who believes the ordinances to be unconstitutional and would prefer not to obey them.

If the City's motion to dismiss is granted, it will dispose of the entire *Jackson* case. In *Pizzo*, on the other hand, while the City has pled and intends to assert the same jurisdictional defenses to the same claims against the City's ordinances raised in *Jackson*, there are other aspects of the case that may not be susceptible to resolution with a motion to dismiss. Accordingly, in an attempt to conserve resources, the City decided to forego the preliminary motion and file an answer in the hopes that it will be able to dispose of the entire case in a single dispositive motion later in the proceedings. This later motion will surely include the standing defenses the City has raised in its preliminary motion in *Jackson*. Jurisdictional defects cannot be waived, and the City can assert them later in *Pizzo* just as effectively as it can now in *Jackson*.

**ARGUMENT**

**I.  ALLOWING THE NRA TO PARTICIPATE AS AN AMICUS AFTER IT OPPOSED AND DEFEATED CONSOLIDATION OF THIS CASE WITH *JACKSON* WOULD BE BURDENSOME AND UNFAIR.**

Without even the barest hint of irony, the NRA claims that it must be allowed to participate in all facets of this case—including not just the claims it has brought itself in *Jackson,* but also the "kitchen sink" claims it has not—because the City's nefarious attempts to bring *Pizzo* to judgment first, combined with the alleged inadequacy of Ms. Pizzo's counsel, will be detrimental to its members' interests. Opening Br. at 4. Quite frankly, the NRA seems to be projecting rather than reasoning, since it is the only party that has argued both sides of the consolidation issues depending on whether it was more interested in slowing and controlling the *Pizzo* case or freeing and expediting its own.

Apparently, the NRA never anticipated that its demand that the two cases proceed separately might result in them proceeding . . . separately—that is, by means of different procedural vehicles and along separate timelines. Now, at least from a technical procedural standpoint, *Pizzo* is now at a later stage in the proceedings than *Jackson*, and the NRA has suddenly developed "particular concern" about "the great possibility that defendants will litigate a dispositive motion or otherwise reach the merits of the claims in *Pizzo*, while *Jackson* remains stalled" with a preliminary motion. Opening Br.

at 4. Ignoring the fact that the City has all along tried to address the cases together and dispose of their shared claims simultaneously, the NRA now suspects "strategic gamesmanship and procedural maneuvering by the City . . . to select the case it prefers to litigate first." *Id.*

While the NRA rightly points out that this Court has wide discretion to decide whether and to what extent any person or entity may appear before it as an amicus, *see, e.g., United States v. Alkaabi*, 223 F.Supp.2d 583, 592 (D.N.J. 2002), the City is not aware of any case, and the NRA certainly does not cite to one, that allows amicus participation to ensure that a particular viewpoint is among those to be considered *first*. Nor is amicus participation a known remedy for litigation strategy or improper gamesmanship, had the City ever engaged in any.[3]

Moreover, granting the NRA's request for status as an amicus in the instant case would only exacerbate the burden the City already faces in simultaneously defending against the same claims against the same statutes twice in the same court. If, in addition, the NRA receives permission to submit amicus briefing in *Pizzo*, the City will face yet a third set of briefs directed to the same claims. It is no answer to assert, as the NRA does, that this burden will be ameliorated if it files its briefs some days after plaintiff *Pizzo* so that it can excise duplicative arguments and eliminate any need for the Court to extend the City's deadline for a comprehensive opposition brief. Opening Br. at 8-9. For this argument, it relies on a note to Federal Rule of Appellate Procedure 29(e), which approves a seven-day stagger in the context of a 60-day appellate response period, not the mere two weeks the City will have to oppose most motions in the district court.

And ultimately more important than the increased hardships to the City, it would be fundamentally unfair to allow the NRA to have its voice heard in both *Pizzo* and *Jackson* now that the identical claims in the two cases will be considered and decided independently by two different judges in the same court. This would give the NRA two chances to prevail on the same claims, an unfair advantage and duplicative burden on the courts that any number of rules of civil procedure, such as

---

[3] The Court should ignore the NRA's unsupported accusations of improper gamesmanship by the City in favor of plain common sense. From the beginning, the City has wanted to treat the shared claims at the same time and in the same way; it still does. The NRA, rather than the City, sought advantage for itself in proceeding separately, and it has done so at the City's expense. To suggest that the NRA now must not only be allowed to proceed separately, but also to appear separately in each case, all to stop the City's supposed grab for unfair advantage, doesn't even pass the red-face test.

1  waiver, collateral estoppel, res judicata, and the powerful restrictions on motions for reconsideration
2  are all designed to prevent.

3        In sum, the NRA's assignment of ill motives to the City makes no sense. But even if the City
4  were doing everything it could to speed *Pizzo* ahead of *Jackson*, that would in no way justify the
5  incursion of the NRA into the unrelated and unconsolidated *Pizzo* case as an amicus. The NRA has
6  already successfully secured its own courtroom to press its claims, and there is no doubt that its
7  advocacy will receive full and fair consideration. It has no claim to going first, or to playing a role in
8  *Pizzo* in the event that it is decided first, particularly in light of the burden and unfairness that would
9  impose on the remaining parties. In the circumstances of this litigation, the Court should not hesitate
10 to deny the NRA's motion.

**II.  AMICUS STATUS IS DISFAVORED WHERE THE POTENTIAL AMICUS, UNINVITED BY THE COURT, SEEKS TO ACT AS A SHADOW PARTY BASED ON ITS UNFOUNDED SUPPOSITION THAT PLAINTIFF'S EXISTING COUNSEL WILL PROVE INADEQUATE.**

      Not content merely to impugn the City's motives, the NRA also questions the competence of plaintiff's chosen counsel—before a single issue in this case has ever been briefed. The NRA imagines itself in the role of shadow counsel, making all the right moves and saving the day when actual counsel inevitably messes up. Even if counsel for the NRA were correct that their own talents, insights and acumen so dramatically outstrip those of plaintiff's counsel such that the Court would be lucky to have them, it is not the proper role of amici to try to trump the plaintiff's choices about who should prosecute the suit on her behalf and how. Yet that is precisely what the NRA here proposes when it denigrates Ms. Pizzo's " 'kitchen sink' approach" as "a strategic choice that runs counter to the *Jackson* plaintiffs' careful selection of their claims [and] suggests that sufficient energy and resources will not be devoted to or expended on the constitutional challenges," and when it disapproves of plaintiff's counsel as having "an unfortunate history missing deadlines and pursuing ill-advised litigation strategies." Opening Br. at 6-7.

      A court may certainly conclude, based on its ongoing experiences with counsel or the constellation of the parties before it, that there is an important interest in the case that is not receiving adequate representation or perhaps any representation at all, and it may invite the participation of

chosen amici to better represent those interests.  *See, e.g., Ryan v. Commodity Futures Trading Comm'n,* 125 F.3d 1062, 1064 (7th Cir. 1997); *Liberty Resources, Inc. v. Philadelphia Housing Auth.*, 395 F.Supp.2d 206, 209 (E.D. Penn. 2005); *News and Sun-Sentinel Co. v. Cox*, 700 F.Supp. 30, 32 (S.D. Fla. 1988).  But it is beyond the pale for an interest group like the NRA to suggest, without invitation from the court and, in any event, before the case has rightly even begun, that a particular plaintiff or her counsel cannot be trusted to litigate Second Amendment issues in an NRA-approved fashion, so the NRA must be allowed to represent those interests itself.

This is precisely the sort of conduct that the Sixth Circuit condemned in *United States v. State of Michigan*, 940 F.2d 143, 161-67 (6th Cir. 1991).  In that case, a group that had been denied intervention but allowed to participate in litigation as an amicus "virtually assumed effective control of the proceedings in derogation of the original parties." *Id*. at 164.  The Sixth Circuit cautioned against "convert[ing] the trial court into a free-wheeling forum of competing special interest groups capable of frustrating and undermining the ability of the named parties/real parties in interest to expeditiously resolve their own dispute." *Id*. at 166.  Accordingly, despite the NRA's claim to unique insight about how best to pursue Ms. Pizzo's case, it would be inappropriate for this Court to allow the NRA to seek to direct in any way a case that is not its own.  "The named parties should always remain in control, with the amicus merely responding to the issues presented by the parties.  An amicus cannot initiate, create, extend, or enlarge issues." *Wyatt v. Hanan*, 868 F.Supp. 1356, 1358-59 (M.D. Alabama 1994); *see also NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F.Supp.2d 1061, 1068 (N.D. Cal. 2005).

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For all of the foregoing reasons, the City respectfully urges the Court to exercise its discretion to deny the NRA's request to participate in this case as amicus curiae.

Dated: April 14, 2011

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
SHERRI SOKELAND KAISER
Deputy City Attorneys

By: s/*Sherri S. Kaiser*
SHERRI SOKELAND KAISER

Attorneys for Defendants CITY AND COUNTY OF SAN FRANCISCO, GAVIN NEWSOM, GEORGE GASCON, HEATHER FONG AND MICHAEL HENNESSEY